UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Nº 10 Civ. 6530 (RJS)

Ross H. Mandell,

Petitioner,

VERSUS

Nicholas S. Reeve, Individually and on Behalf of Prostar 2000,

Respondents.

Nº 10 Civ. 7389 (RJS)

Nicholas S. Reeve, Individually and on Behalf of Prostar 2000,

Cross-Petitioners,

VERSUS

Granta Capital Group LLC, Michael R. Passaro, Ross H. Mandell, and Stephen W. Shea,

Cross-Respondents.

OPINION AND ORDER
October 4, 2011

Richard J. Sullivan, District Judge:

Before the Court are cross-petitions to vacate and confirm an arbitration award rendered by a Financial Industry Regulatory Authority ("FINRA") arbitration panel in favor of Nicholas S. Reeve against Ross H. Mandell, Stephen W. Shea, Michael R. Passaro, and Granta Capital Group LLC (collectively, the "Cross-Respondents").

Mandell has moved to vacate the award as to him. Reeve has cross-moved on behalf of himself and an entity known as Prostar 2000 to confirm the award in its entirety. For the reasons that follow, the Court denies the petition to vacate the award and grants the cross-petition to confirm the award.

## I. BACKGROUND[1]

### A. Reeve's Investment with Granta Capital Group LLC

This dispute arises out of an approximately $380,000 investment made by Reeve and Prostar 2000 with Granta Capital Group LLC ("GCG"), a broker-dealer that at all relevant times operated under the name of Sky Capital LLC ("Sky Capital"). Reeve is a resident of the United Kingdom. (Pet. to Confirm ¶ 1.) Prostar 2000 is a UK organization formed by Reeve in 2005 to serve as a depository for any profits Reeve earned with GCG. (Id., Ex. A ("Statement of Claim") ¶ 10.) Mandell founded GCG and at all relevant times served as its president. (Id. ¶ 6.) Shea was GCG's Chief Operating Officer and Chief Supervisory Principal of GCG's Boca Raton Office. (Id. ¶ 8.) Passaro was a registered representative of GCG, operating the company's Boca Raton office. (Id. ¶ 5.) As of February 2009, the Cross-Respondents were registered with FINRA (Pet. to Confirm., Exs. B-D) and agreed to be bound by the FINRA Code of Arbitration Procedure. (Id., Ex. E.)

According to Reeve's Statement of Claim, in July 2003, Passaro cold-called Reeve and made a number of misrepresentations to encourage Reeve to invest in United States securities with GCG. (Id., Ex. A ¶ 11.) Although Passaro promised Reeve that he would not be charged commissions (id. ¶ 19), after obtaining Reeve's initial $230,000 investment, Passaro and GCG engaged in a pattern of excessive and unauthorized trading in highly speculative securities that generated in excess of $100,000 in fees for GCG (id. ¶¶ 15-20). In doing so, Passaro falsely marked certain unauthorized transaction orders to make them appear as if they were effected at Reeve's consent. (Id. ¶ 20.) As the initial investment began to lose value, Passaro further induced Reeve to invest an additional $150,000 into a special private offering of Global Secure Corporation while concealing Mandell's 30% ownership in the company and other pertinent facts. (Id. ¶¶ 22-24.) By December 2008, when GCG was shuttered by securities regulators, Reeve's investment had lost substantially all of its value. (Id. ¶¶ 3, 27.)

### B. FINRA Arbitration Proceedings

In April 2009, Reeve initiated arbitration proceedings before FINRA, bringing claims against Cross-Respondents[2] under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, Section 12 of the Securities Act of 1933, FINRA Conduct Rules, United Kingdom securities laws, and the common law for breaches of fiduciary duty, failure to supervise, and common law fraud. GCG, Shea, and Passaro failed to appear in the arbitration. Mandell appeared *pro se* for the majority of the proceedings, but, as

---

[1] The following facts are drawn from the parties' submissions in the related actions docketed at 10 Civ. 6530 and 10 Civ. 7389 and do not constitute findings of fact by the Court. In ruling on the cross-petitions, the Court has considered the Petition to Vacate the Award, 10 Civ. 6530, Doc. No. 1 ("Pet. to Vacate"); the Petition to Confirm the Award, 10 Civ. 7389, Doc. No. 1 ("Pet. to Confirm"); Mandell's Memorandum in Support of the Petition to Vacate, 10 Civ. 6530, Doc. No. 5 ("Mandell's Mem."); Reeve's Memorandum in Opposition to the Petition to Vacate and in Support of the Cross-Petition to Confirm, 10 Civ. 6530, Doc. No. 12 ("Reeve's Mem. & Opp'n"); Mandell's Memorandum in Opposition to the Petition to Confirm and in Support of the Petition to Vacate, 10 Civ. 6530, Doc. No. 17 ("Mandell's Opp'n & Reply"); Reeve's Reply, 10 Civ. 7389, Doc. No. 8 ("Reeve's Reply"); and the various declarations and exhibits submitted in connection with these filings.

[2] The Statement of Claim also named Robert L. Goss as respondent, but Reeve settled his claims against Goss during the pendency of the arbitration hearings.

described below, retained counsel to file one "emergency motion" to stay an evidentiary hearing. (*See* Decl. of Jeffrey C. Hoffman, dated Aug. 31, 2010, No. 10 Civ. 6530, Doc. No. 4 ("Hoffman Decl."), Ex. 25 at 1.)

In July 2009, Mandell, Shea, and Passaro were indicted for securities fraud and conspiracy to commit securities fraud, mail fraud, and wire fraud in connection with the sale of the securities of Sky Capital Holdings, LLC and Global Secure Holdings, LTD. (*See id.*, Ex. 1). Subsequently, on August 17, 2009, Mandell, acting *pro se*, moved to stay arbitration pending the outcome of his criminal case. (*Id.*, Ex. 7.) A panel of three arbitrators denied Mandell's motion on November 11, 2009 without prejudice to renewal upon completion of discovery. (*Id.*, Ex. 8.)[3]

In September 2009, one of the arbitrators, Adam M. Kauff, disclosed a prior acquaintance with Reeve's counsel, Nicholas Guiliano. (*Id.*, Ex. 9.) Kauff stated that he was representing an adverse party in two unrelated pending arbitrations filed by Guiliano, and had been adverse to Guiliano in one prior arbitration. (*Id.*) Neither party objected to Kauff serving as an arbitrator.

On March 30, 2010, the parties were directed to participate in an initial pre-hearing conference call on April 7, 2010 concerning the scheduling of a hearing. (*Id.*, Ex. 16.) This conference call had been rescheduled at least four times, in part to accommodate Mandell's schedule. (*See id.*, Ex. 15' Reeve's Mem. & Opp'n, Exs. 5-8). The notice scheduling the call advised the parties that they would be contacted by an

operator, but provided them with a call-in number and password to use in the event they were not reached by FINRA or were disconnected from the call. (Hoffman Decl., Ex. 16.) On the evening before the call, Mandell e-mailed a FINRA logistical assistant stating he would be out of town on an emergency, but would "do [his] best to be available" at a specified cell phone number. (Reeve's Mem. & Opp'n, Ex. 27.) Mandell was not called by FINRA on April 7, and did not attempt to connect to the call himself. (*Id.*) The conference call proceeded nevertheless, and the arbitration panel selected a hearing date of July 9, 2010. (Hoffman Decl., Ex. 18.) Mandell received notice of this hearing date in a FINRA letter dated April 15, 2010. (*Id.*, Ex. 19.)

On April 30, 2010, Mandell submitted an e-mail that he now characterizes as a renewal of his motion to stay arbitration pending the resolution of his criminal case. (Pet. to Vacate ¶ 21; Hoffman Decl., Ex. 21.)[4] On July 6, 2010, the arbitration panel denied his request for a stay. (Hoffman Decl., Ex. 24.) On July 7, 2010, Mandell submitted an "emergency motion" to stay the July 9, 2010 hearing, drafted by counsel retained "solely" in connection with the "emergency motion." (*Id.*, Ex. 25 at 1.) Mandell asserted that he was unavailable to attend the hearing and argued that, due to his exclusion from the April 7, 2010 conference call, his need to complete discovery, and the lateness of FINRA's response to his motion, the hearing date should be postponed. The motion further set forth approximately six pages of legal argument concerning Mandell's defenses "that would completely

---

[3] On July 26, 2011, after a jury trial, Mandell was found guilty on all counts. *See United States v. Mandell*, No. 09 Cr. 662 (PAC) (S.D.N.Y.), Doc. No. 151. Sentencing is pending in that matter.

[4] In the e-mail, Mandell asserted that FINRA had "ignored and never commented back" on his August 17, 2009 motion. (Hoffman Decl., Ex. 21). However, as he now acknowledges, FINRA denied that motion on November 11, 2009. (Mandell's Mem. 4)

preclude liability against him." (*Id.*, Ex. 25 at 10-16.) On July 8, 2010, Reeve submitted an opposition to the motion, arguing that he would be prejudiced by a last-minute postponement after having travelled from the United Kingdom to New York and incurred non-refundable costs. (*Id.*, Ex. 26 at 2.) Reeve also argued that Mandell had been dilatory throughout the arbitration proceedings and had ample opportunity to conduct discovery. (*Id.*) Mandell submitted a reply on July 8, 2010. (*Id.*, Ex. 27.) On the same day, the panel denied Mandell's emergency motion. (*Id.*, Ex. 28.)

Neither Mandell nor his counsel appeared at the hearing on July 9, 2010. On August 4, 2010, the arbitration panel issued an award in favor of Reeve and Prostar 2000. (*See* Pet. to Confirm, Ex. K.) The panel found Cross-Respondents jointly and severally liable to Reeve and Prostar 2000 for (1) compensatory damages in the amount of $367,295; (2) annual interest of 9% on compensatory damages of (a) $217,295 from July 9, 2006 until payment of the award, and (b) $150,000 from August 11, 2004 until payment of the award; and (3) reimbursement of $300 in filing fees. (*Id.* at 3.) Cross-Respondents were also ordered to pay FINRA $3,375 in fees. (*Id.* at 4.)

## II. PROCEDURAL HISTORY

On September 2, 2010, Mandell filed a petition to vacate the award pursuant to 9 U.S.C. § 10, docketed at 10 Civ. 6530 (RJS). Briefing with respect to the petition to vacate was fully submitted as of November 18, 2010. After his initial cross-petition to confirm was rejected by the Clerk's Office for procedural deficiencies, Reeve filed a petition to confirm the award on September 27, 2010, docketed at 10 Civ. 7389 (RJS).

Other than Mandell, none of the Cross-Respondents have appeared in this action.[5]

## III. LEGAL STANDARD

After the entry of an arbitration award, the Federal Arbitration Act ("FAA") permits a party to apply to the district court "for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9. Section 10, in turn, provides four instances in which the court may vacate an arbitral award:

> (1) where the award was procured by corruption, fraud, or undue means;

> (2) where there was evident partiality or corruption in the arbitrators, or either of them;

> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10. A reviewing court "will vacate an award only upon finding a violation of one of the four statutory bases, or, more rarely, if [it] find[s] a panel has acted in manifest disregard of the law."

---

[5] Reeve served Shea on December 16, 2010 and Passaro on December 28, 2010.

*Porzig v. Dresdner, Kleinwort, Benson, N.A. LLC*, 497 F.3d 133, 139 (2d Cir. 2007).

In evaluating whether an arbitration award is subject to vacatur, courts undertake a "very limited review." *Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108, 111 (2d Cir. 1993). "The showing required to avoid summary confirmation of an arbitration award is high, and a party moving to vacate the award has the burden of proof." *Willemijn Houdstermaatschappij, B.V. v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997) (internal citations omitted). Moreover, "[t]he arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (internal citations and quotations omitted). Indeed, where, as here, the arbitrators have not provided the grounds for their decision, the court need only find "'a barely colorable justification for the outcome reached'" to confirm the award. *Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Emps. Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992) (quoting *Andros Compania Maritima, S.A. v. Marc Rich & Co.*, 579 F.2d 691, 704 (2d Cir. 1978)).

## IV. DISCUSSION

### A. Confirmation against Mandell

Mandell moves to vacate the award on three grounds. He argues that the arbitrators (1) committed misconduct in refusing to postpone the hearing upon sufficient cause shown, (2) manifestly disregarded the law and facts, and (3) issued the award as a result of a "fundamentally unfair" arbitration. For the reasons set forth below, the Court finds Mandell's contentions unavailing and confirms the award.

### 1. Refusal to Postpone

Mandell argues that the award should be vacated because the arbitrators were guilty of misconduct in denying his multiple requests to postpone the July 9, 2010 hearing. According to Mandell, there was sufficient cause to postpone the hearing in light of his unavailability to attend the hearing and his exclusion from the April 7, 2010 pre-hearing conference.

Pursuant to 9 U.S.C. § 10(a)(3), the Court may vacate an arbitral award if "the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown." "'Misconduct typically arises where there is proof of either bad faith or gross error on the part of the arbitrator.'" *Alexander Julian, Inc. v. Mimco, Inc.*, 29 F. App'x 700, 703 (2d Cir. 2002) (quoting *Bisnoff v. King*, 154 F. Supp. 2d 630, 637 (S.D.N.Y. 2001).) However, arbitrators enjoy broad latitude in exercising their discretion to grant or deny a request to adjourn. *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 19 (2d Cir. 1997). "'In evaluating an arbitrator's decision to deny a postponement, courts consider whether there existed a reasonable basis for the arbitrator's decision and whether the denial created a 'fundamentally unfair' proceeding.'" *Alexander Julian*, 29 F. App'x at 703 (quoting *Bisnoff*, 154 F. Supp. 2d at 637).

Upon reviewing the record, the Court cannot conclude that it was fundamentally unfair for the arbitrators to deny Mandell's requests to postpone the hearing. *See id.* (affirming an arbitration award rendered after a hearing scheduled and held on a date when the losing party's counsel was unavailable). Significantly, Mandell was

notified of the July 9, 2010 hearing date nearly three months prior to the hearing. (Hoffman Decl., Ex. 19 at 2.) Although Mandell subsequently objected that he was "unavailable" to attend the hearing, he never articulated a reason for his unavailability or suggested an alternate date. Instead, by e-mail dated April 20, 2010, Mandell vigorously protested his exclusion from the pre-hearing conference call and accused FINRA of a "deliberate attempt . . . to prejudice [him] and to punish [him] for [his] $300 million claim against the NASD!!!!!!" (*Id.*, Ex. 20.) Mandell's subsequent correspondence with FINRA – including two submissions made by counsel – similarly failed to proffer the nature or duration of his unspecified scheduling conflict to assist the arbitration panel in assessing the relative inconvenience to the parties and arbitrators of maintaining or adjourning the hearing date. (*See, e.g.*, *id.*, Ex. 21 ("The date and time of the scheduled hearing decided without my consent is unacceptable to me"); *id.*, Ex. 23 ("I am unavailable on that date and have been for months."); *id.*, Ex. 25 at 6 (stating Mandell "was unavailable.").)

Notably, this was not a situation in which a *pro se* litigant recently retained counsel who needed time to be brought up to speed on the case. To the contrary, Mandell's attorneys – who were retained as early as July 2009 to represent Mandell in the related criminal action, *United States v. Mandell*, 09 Cr. 662 (PAC) (S.D.N.Y.) – explicitly stated that they represented Mandell "solely" for the limited purpose of obtaining a continuance of the hearing. (*Id.*, Ex. 25 at 1.) Under these circumstances, the arbitrators plainly had "at least a barely colorable justification" for denying Mandell's request for adjournment. *Bisnoff*, 154 F. Supp. 2d at 637. Having denied Mandell's prior request to indefinitely

adjourn the proceedings pending the resolution of his criminal case, the arbitrators were entitled to harbor skepticism regarding Mandell's general claim of unavailability. Moreover, the arbitrators could have reasonably concluded that adjourning the hearing would present substantial inconvenience to the arbitrators and Reeve, who made plans to travel from the United Kingdom to New York. (*See* Hoffman Decl., Ex. 26 at 2.)

That neither Mandell nor his counsel subsequently appeared at the July 9, 2010 hearing does not support Mandell's contention that he was deprived of the "opportunity" to present evidence on his behalf. *See Alexander Julian*, 29 F. App'x at 703 ("Further, [petitioner] had ample opportunity for representation at the hearing. It chose to protest the arbitrators' decision by not putting on a defense. It could have chosen to lodge a vigorous protest about the scheduling while putting on a defense using alternate counsel. Its failure to proceed does not make the hearings fundamentally unfair."); *Seneca Ins. Co. Inc. v. Dowers*, No. 98 Civ. 4084 (LAP), 1999 WL 144497, at *6 (S.D.N.Y. Mar. 17, 1999) ("[Respondent] had an adequate opportunity to present [his] evidence at the long-scheduled March 31 hearing. That he chose to absent himself from that hearing, either by design or poor planning, does not change the fact that the opportunity was presented." (internal quotations omitted, second alteration in original)). Nor does the Court find merit in Mandell's argument that the award should be vacated because FINRA did not ensure that he was connected to the April 7, 2010 conference call. Leaving aside the fact that Mandell himself did not attempt to connect to the conference by using the call-in number he was provided, Mandell offers no authority for the proposition that exclusion from a scheduling

6

conference constitutes a fundamentally unfair proceeding. Likewise, Mandell's self-serving claim that the hearing should have been postponed because, as a *pro se* litigant, he was "unaware" of his rights to obtain discovery in arbitration, is belied by both the instructions provided to Mandell by FINRA months before the hearing (*see, e.g.*, Hoffman Decl., Ex. 19 at 3), and Mandell's apparent participation in as many as fifteen prior customer-initiated arbitrations (*see* Reeve's Mem. & Opp'n 2 n.2 (collecting citations of proceedings)).

Mandell's reliance on *Tube & Steel Corp. of Am. v. Chicago Carbon Steel Prods.*, 319 F. Supp. 1302 (S.D.N.Y. 1970) is likewise misplaced. In that case, the parties to the arbitration were initially informed that the arbitrators would be available for a hearing in New York on August 17, 1970. *Tube & Steel Corp.*, 319 F. Supp. at 1303. This date was acceptable to both the petitioner and the Chicago-based respondent, which had previously advised the panel that its representatives would not be able to travel to New York prior to August 17. *Id.* Subsequently, however, the panel unilaterally scheduled an August 10 hearing date and rejected respondent's request to adjourn the hearing to August 17. *Id.* The district court vacated the award, holding that "in ignoring the communications of the respondent and the agreeableness of the petitioner to the week of August 17 for the arbitration and insisting on proceeding for the sole convenience of themselves, the arbitrators were guilty of behavior which unfairly and unnecessarily prejudiced the rights of the respondent." *Id.* at 1304. The instant case is plainly distinguishable from *Tube & Steel* on several grounds, the most obvious of which is that Mandell did not inform the arbitrators about his unavailability prior to the setting of a hearing date and that Reeve, who had

made plans to travel to New York for the arbitration, did not consent to Mandell's unilateral request for an indefinite postponement.

Likewise, the vacatur of an award in *Tempo Shain Corp. v. Bertek, Inc.* is inapposite to the circumstances here. There, the Second Circuit found that it was fundamentally unfair to proceed with a hearing when an important witness who intended to provide crucial evidence could not appear due to his wife's sudden and unforeseen reoccurrence of cancer. 120 F.3d at 17-18, 20. *Tempo Shain* thus stands for the proposition that absent a reasonable basis, an arbitration panel's refusal to grant an adjournment of a hearing due to a medical emergency constitutes misconduct if it results in the exclusion of material evidence prejudicing the parties in the dispute. *See Bisnoff*, 154 F. Supp. 2d at 638. By contrast, Mandell does not claim to have suffered any medical emergency and appears to have made a deliberate decision not to retain counsel to appear on his behalf at the hearing. Mandell also took advantage of the opportunity to put forth extensive legal and factual argument prior to the arbitration. Accordingly, the Court finds that the arbitrators' refusal to postpone the hearing did not result in a fundamentally unfair proceeding.

## 2. Manifest Disregard of the Law

Mandell next argues that the arbitrators issued the award in manifest disregard of the law. An arbitration panel acts in manifest disregard of the law if the arbitrators are "fully aware of the existence of a clearly defined governing legal principle, but refuse[] to apply it, in effect, ignoring it." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 548 F.3d 85, 96 (2d Cir. 2008) (alteration in original and citation omitted),

*rev'd on other grounds*, 130 S. Ct. 1758 (2010).

Until recently, the Second Circuit considered "manifest disregard of the law" as a separate ground from the four statutory bases on which to vacate an arbitration award. *See Porzig*, 497 F.3d at 139. However, in *Hall Street Associates, L.L.C. v. Mattel, Inc.*, the Supreme Court held that "§§ 10 and 11 respectively provide the FAA's *exclusive* grounds for expedited vacatur and modification." 552 U.S. 576, 584 (2008) (emphasis added). After *Hall Street*, the Second Circuit concluded that the manifest disregard doctrine survives as a "reconceptualized . . . judicial gloss" on the grounds for vacatur set forth in 9 U.S.C. § 10. *Stolt-Nielsen*, 548 F.3d at 94; *see T.Co Metals., L.L.C. v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 340 (2d Cir. 2010) ("So interpreted, we concluded that manifest disregard 'remains a valid ground for vacating arbitration awards.'" (citing *Stolt-Nielsen*, 548 F.3d at 94)). Although the Supreme Court subsequently reversed *Stolt-Nielson* on other grounds, it explicitly declined to decide whether "manifest disregard survives [its] decision in *Hall Street Associates* . . . , as an independent ground for review or as a judicial gloss on the enumerated grounds for vacatur set forth at 9 U.S.C. § 10." *Stolt-Nielsen S.A.*, 130 S. Ct. at 1768 n.3 (internal citations and quotations omitted). Therefore, in the absence of additional guidance from the Supreme Court or the Second Circuit, this Court presumes the continued survival of the manifest disregard doctrine as a "judicial gloss" on the statutory bases for vacatur. *T.Co Metals. L.L.C.*, 592 F.3d at 340.

The court's review of manifest disregard is "'highly deferential' to the arbitrators, and relief on such a claim is therefore 'rare.'" *STMicroelectronics, N.V. v. Credit Suisse*

*Sec. (USA) L.L.C.*, No. 10 Civ. 3847, 2011 WL 2151008, at *8 (2d Cir. June 2, 2011) (citing *Porzig*, 497 F.3d at 138). A court "will not vacate an award because of 'a simple error in law or a failure by the arbitrators to understand or apply it' but only when a party clearly demonstrates 'that the panel intentionally defied the law.'" *Id.* (citing *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389, 393 (2d Cir. 2003)). Where, as here, the arbitrators do not explain the reason for their decision, it will be upheld if the court can discern any valid ground for it. *Id.*

Upon reviewing the record, the Court finds ample valid grounds for the relief granted to Reeve. One such basis arises from Mandell's control person liability for Passaro's misconduct pursuant to Section 20(a) of the Securities Exchange Act of 1934. Section 20(a) provides, in relevant part,

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, . . . unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or causes of action.

15 U.S.C. § 78t(a). "To establish a prima facie case of control person liability, a plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the

controlled person's fraud." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007). "In this Circuit, the 'control person' provisions are broadly construed as they 'were meant to expand the scope of liability under the securities laws.'" *Dietrich v. Bauer*, 126 F. Supp. 2d 759, 764 (S.D.N.Y. 2001) (citation omitted).

Mandell does not dispute that there was a primary violation by the controlled person, Passaro. (*See* Mandell's Mem. 24 (referring to Passaro as "the principal wrongdoer here.").)  The next element, control, "has been construed as requiring 'only some indirect means of discipline or influence short of actual direction' by the purported controller." *In re Moody's Corp. Sec. Litig.*, 599 F. Supp. 2d 493, 517 (S.D.N.Y. 2009) (citing *Drobbin v. Nicolet*, 631 F. Supp. 860, 884 (S.D.N.Y. 1986)).  Control of a primary violator may be demonstrated by "showing that the defendant 'possessed the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise.'" *In re Parmalat Sec. Litig.*, 594 F. Supp. 2d 444, 455-56 (S.D.N.Y. 2009) (citing *SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1473-73 (2d Cir. 1996) (further citations omitted).)  "[O]nly the ability to direct the actions of the controlled person, and not the active exercise thereof" is necessary to establish control.  *Dietrich*, 126 F. Supp. 2d at 764 (citation omitted).

Although, as Mandel points out, "[s]ome courts . . . have stated that officer or director status alone is not sufficient to constitute control," *In re Alstom SA*, 406 F. Supp. 2d 433, 488 n.51 (S.D.N.Y. 2005), several courts – including the one cited by Mandell – recognize a practical distinction between outside directors and high-ranking executives like Mandell.  *See id.* ("The CEO or COO presumably has the power to control a corporation in a way that an outside director does not. . . . 'Corporate officers are usually presumed to possess the requisite power to control the actions of their employees and are often held accountable as controlling persons.'" (quoting 3 Thomas Lee Hazen, *The Law of Securities Regulation* § 12:24, at 610-11 (5th ed. 2005)); *In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278, 310 (S.D.N.Y. 2005) ("Plaintiffs allege that Copeland was the chief executive officer of DTT and his alleged role in resolving disputes in respect of the Parmalat auditors.  It could be inferred from these facts that he had actual control over the primary violators.").

Upon reviewing the record, the Court finds that the arbitration panel was plainly entitled to find that as founder, CEO, sole shareholder, and registered principal of Sky Capital, Mandell had at least "some indirect means of discipline or influence" over Passaro.  *In re Moody's*, 599 F. Supp. 2d at 517.  Furthermore, the arbitrators had ample basis to conclude that Mandell was a "culpable participant" in the fraud.  For instance, Reeve testified that Mandell personally solicited his investment at a sales presentation in the United Kingdom (Transcript of July 9, 2010 Hearing, 21:21 – 22:18, Hoffman Decl., Ex. 29)).  Mandell also would have personally profited from Passaro's alleged fraudulent purchases of Global Secure Corporation on Reeve's behalf, a company in which Mandell held a 30% ownership.  Based on these and other facts in the record, the Court cannot find that the arbitrators "intentionally defied the law" in finding Mandell liable.  *STMicroelectronics*, 2011 WL 2151008, at *8.  To the contrary, the Court is left with the firm conviction that the award was properly entered.

### 3.   Right to Meaningfully Participate in the Arbitration

Mandell last argues that the Award must be vacated because, as a *pro se* litigant, he was deprived of the right to meaningfully participate in the arbitration. In support of this claim, Mandell lodges a compendium of complaints, including that (1) "FINRA did not make clear to him[] that he was entitled to discovery"; (2) FINRA conducted an unfair proceeding by failing to properly serve him with a statement of claim, excluding him from a conference call and delaying its decision to deny Mandell's motion to adjourn until three days prior to the hearing; and (3) Mandell "did not understand, and FINRA disregarded, that one of the arbitrators had made comments indicating bias in favor of Claimants' counsel." (*See* Mandell's Mem. 27-29.) The Court finds these claims without merit.

The Court has already found that Mandell was both sufficiently informed about his right to take discovery and had the opportunity to do so. Likewise, any logistical neglect on FINRA's part in connecting Mandell to a pre-hearing conference call did not come close to the level of a "fundamentally unfair" proceeding. In any event, there is no dispute that Mandell had the conference call number and password that would have enabled him to join the call. Next, even accepting Mandell's claims that FINRA failed to timely serve him with the Statement of Claim, the Court finds no prejudice accruing to Mandell from the late service. Mandell answered the Statement of Claim in October 2009 – approximately eight months prior to the arbitration hearing – and FINRA denied Reeve's motion for a default judgment. (Reeve's Mem. & Opp'n, Ex. 4.) Nor is there a basis to vacate the arbitration award based on the arbitration panel's delay in addressing Mandell's "renewed motion" to postpone the hearing (Mandell's Mem. 7), which, in reality, was an e-mail erroneously complaining that the August 2009 motion had not been decided. As noted above, the panel actually denied that motion in November 2009 in a letter sent to Mandell's address (Hoffman Decl., Ex. 8), and Mandell's failure to make arrangements to attend the hearing in the hope that his subsequent motion would be granted was a decision made at his own peril.[6]

Finally, although Mandell states that he was concerned that one of the arbitrators "could be biased" in favor of Reeve (Mandell's Mem. 14), he does not move to vacate the award on the basis of evident partiality or corruption pursuant to 9 U.S.C. § 10(a)(2). Nor would the circumstances justify such relief. To set aside an award for arbitrator partiality, "the interest or bias [of the arbitrator] . . . must be direct, definite

---

[6]   Mandell's "emergency motion" appeared to abandon his earlier argument that he was entitled to a stay of the arbitration during the pendency of his criminal case and he does not press that claim now. In any event, the fact that Mandell's conduct also resulted in a criminal charge against him did not automatically avail him with a shield against Reeve's efforts to expeditiously pursue a civil arbitration against him. *See United States v. Eberhard*, 03 Cr. 562 (RWS), 2004 WL 616122, *4 (S.D.N.Y., Mar. 30, 2004) (denying a defendant's request to stay an NASD arbitration during the pendency of a criminal action that would require him to assert his Fifth Amendment privilege in the arbitration upon finding that "[s]uch grounds alone do not provide an adequate basis to stay a civil proceeding even where a federal court has the authority to do so"); *see also Citibank, N.A. v. Hakim*, No. 92 Civ. 6233 (MBM), 1993 WL 481335, at *2 (S.D.N.Y. Nov. 18, 1993) ("Here, defendant has argued that he will be forced to choose between testifying or asserting his Fifth Amendment privilege, and, in turn, either risking self-incrimination or adverse inferences and a diminished ability to defend against the civil claims asserted against him. Such a predicament will not alone justify a stay of civil discovery."); *Paine, Webber, Jackson & Curtis Inc. v. Malon S. Andrus, Inc.*, 486 F. Supp. 1118, 1119 (S.D.N.Y. 1980).

and capable of demonstration rather than remote, uncertain, or speculative." *Sanford Home for Adults v. Local 6, IFHP*, 665 F. Supp. 312, 320 (S.D.N.Y. 1987) (citation omitted); *see also Transportes Coal Sea de Venezuela C.A. v. SMT Shipmanagement & Transport Ltd.*, No. 05 Civ. 9029 (KMK), 2007 WL 62715, at *3 (S.D.N.Y. Jan. 9, 2007). Evident partiality "will be found where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." *Morelite Const. Corp. v. N.Y.C. Council Carpenters Benefit Funds*, 748 F.2d 79, 84 (2d Cir. 1984). The burden of proof rests on the party raising the claim of bias. *Sanford Home for Adults*, 665 F. Supp. at 316.

Mandell does not dispute that the allegedly biased arbitrator, Adam M. Kauff, fully disclosed any possible conflict. An "arbitrator's duty . . . [is] to disclose any circumstances likely to create a presumption of bias or which he believes might disqualify him as an impartial Arbitrator. The arbitration award cannot be set aside where an arbitrator has completely followed his obligations under the rules." *Reed & Martin, Inc. v. Westinghouse Elec. Corp.*, 439 F.2d 1268, 1275 (2d Cir. 1971) (internal quotations omitted). On September 10, 2009, approximately 10 months prior to the hearing, Kauff disclosed that he was employed by and represented a company in two pending arbitrations filed by Reeve's counsel. (*See* Hoffman Decl., Ex. 9.) He also disclosed that had also been adverse to Reeve's counsel once in the past. Thus, it would appear that to the extent any party might have been concerned about perceived impartiality it would have been Reeve. In any event, Mandell did not make any motion to remove Kauff from the arbitration panel

pursuant to FINRA Rule 12410(a)(1),[7] and makes no serious showing now why that request would have been meritorious or how Kauff subsequently exhibited a direct or definite bias against Mandell. At most, Mandell relates that at an unspecified pre-hearing conference, Kauff "made some comments about his friendly relationship with Claimant's counsel, and was dismissive and borderline hostile when [Mandell] objected." (Decl. of Ross H. Mandell, dated Aug. 31, 2010, No. 10 Civ. 6530, Doc. No. 3, ¶ 9.) These generalized characterizations fail to establish any direct and ascertainable bias on Kauff's part that would have justified his removal.

Accordingly, having considered all of Mandell's arguments for vacatur, the Court finds no basis from which to vacate the award and hereby confirms it as to Mandell.

### B. Confirmation against Granta Capital Group, Shea, and Passaro

Reeve also seeks to confirm the award as to the remaining Cross-Respondents – GCG, Shea, and Passaro, who have all failed to appear in this action. In this Circuit, "default judgments in confirmation/vacatur

---

[7] Rule 12410(a)(1) provides:

> The Director will grant a party's request to remove an arbitrator if it is reasonable to infer, based on information known at the time of the request, that the arbitrator is biased, lacks impartiality, or has a direct or indirect interest in the outcome of the arbitration. The interest or bias must be definite and capable of reasonable determination, rather than remote or speculative. Close questions regarding challenges to an arbitrator by a customer under this rule will be resolved in favor of the customer.

FINRA Code of Arbitration Procedure for Customer Disputes, Rule 12410(a)(1).

proceedings are generally inappropriate." *D.H Blair*, 462 F.3d at 109. Accordingly, a petition to confirm an arbitral award should generally not be treated as a default judgment, but instead should be "treated as akin to a motion for summary judgment based on the movant's submissions." *Id.* When the non-movants fail to respond, the court "may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *Id.* at 109-10 (internal citations and quotations omitted). "Nonetheless, in the context of a petition to confirm an arbitration award, the burden is not an onerous one: confirmation of an arbitral award is generally 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected.'" *N.Y.C. Dist. Council of Carpenters Pension Fund v. Angel Constr. Grp., LLC*, No. 08 Civ. 9061 (RJS), 2009 WL 256009, at *1 (S.D.N.Y. Feb. 3, 2009) (quoting *D.H. Blair*, 426 F.3d at 110.)

After reviewing the record submitted by Reeve in the light most favorable to the non-moving parties, the Court finds that no genuine issue of material fact exists that would preclude this Court from confirming the award. As of February 2009, the Cross-Respondents were registered with FINRA (Pet. to Confirm., Exs. B-D) and, according to the terms and conditions of their association with FINRA, agreed to be bound by the FINRA Code of Arbitration Procedure. (*Id.*, Ex. E.) The Cross-Respondents were served with the Statement of Claim and notice of the final hearing. (*Id.*, Exs. F, I-J.) There is no evidence that the award was procured by fraud, or that the arbitrators were biased, guilty of some misconduct, or exceeded their powers. Accordingly, the Court finds that the award

should be confirmed as to GCG, Shea, and Passaro.

## C.  Calculation of the Award

The Petition to Confirm seeks (1) "Compensatory damages of $734,590"; (2) "Interest at the rate of 9% per annum on compensatory damages of $367,295 from July 9, 2010 until the award is paid"; (3) "Interest at the rate of 9% per annum on compensatory damages of $217,295 from July 9, 2010 until the award is paid"; and (4) "Interest at the rate of 9% per annum on compensatory damages of $150,00 [sic] from August 11, 2004 until the award is paid." (Pet. to Confirm ¶ 25.)

However, Reeve appears to have misapprehended the amount of the award and double-counted the compensatory damages ordered by the arbitration panel. The award clearly sets forth the Cross-Respondents' obligations to pay a single compensatory award of $367,295, along with interest on that amount accruing at two different periods of time:

1. Respondents Granta, Pass[a]ro, Mandell, and Shea are jointly and severally liable for and shall pay to Claimants compensatory damages in the amount of $367,295.00.

2. Respondents Granta, Pass[a]ro, Mandell, and Shea are jointly and severally liable for and shall pay to Claimants interest at the rate of 9% per annum on compensatory damages of $217,295.00 from July 9, 2006 until payment of the Award.

3. Respondents Granta, Pass[a]ro, Mandell, and Shea are jointly and

severally liable for and shall pay to Claimants interest at the rate of 9% per annum on compensatory damages of $150,000.00 from August 11, 2004 until payment of the Award.

4. Respondents Granta, Pass[a]ro, Mandell, and Shea are jointly and severally liable for and shall pay to Claimants $300.00 to reimburse Claimants for the non-refundable portion of the filing fee previously paid to FINRA Dispute Resolution.

5. Any and all relief not specifically addressed herein, including punitive damages, is denied.

(Pet. to Confirm, Ex. K at 3.) Thus, while Reeve appears to have construed the second and third portions of the award as including both interest *and* an additional compensatory award, a plain reading of those provisions allows *only* interest on the main $367,295 compensatory award with two different time periods of accrual.

Accordingly, Reeve is entitled to judgment in the amount of (1) $367,595.00, and (2) interest to accrue at the rate of 9% per annum on the amounts of (a) $217,295.00 from July 9, 2006, and (b) $150,000.00 from August 11, 2004. Because, as described below, the Court will award additional attorney's fees and costs against some of the Cross-Respondents, it will not enter final judgment until further inquiry into those damages.

## D.  Attorney's Fees and Costs

At the close of his reply papers, Reeve requests the Court award "sanctions in the form of costs and attorney's fees, upon further application by counsel for Reeve." (Reeve's Reply 21.)  Generally, "in a federal action, attorney's fees cannot be recovered by the successful party in the absence of statutory authority for the award."  *Int'l Chem. Workers Union (AFL-CIO), Local No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985).  Section 9 of the Federal Arbitration Act does not provide for recovery of attorney's fees.  Nevertheless, "[p]ursuant to its inherent equitable powers . . . a court may award attorney's fees when the opposing counsel acts 'in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Angel Constr. Group*, 2009 WL 256009, at *2-3 (internal citations and quotations omitted).  In the context of confirmation proceedings, "the guiding principle has been stated as follows: when a challenger refuses to abide by an arbitrator's decision without justification, attorney's fees and costs may properly be awarded."  *Int'l Chem. Workers Union*, 774 F.2d at 47 (internal citations and quotations omitted).

Cross-Respondents have failed to abide by the arbitrator's award.  Indeed, other than Mandell, Cross-Respondents have not appeared in the arbitration proceedings or this confirmation action.  Thus, it is "axiomatic" that GCG, Shea, and Passaro have offered no justification for their failure to abide by the award.  *Angel Constr. Group*, 2009 WL 256009, at *3.  Courts have routinely deemed an award of attorney's fees justified where a defendant has failed to pay an arbitral award and failed to respond to the petition to confirm the award.  *See Abondolo v. H. & M. S. Meat Corp.*, No. 07 Civ. 3870 (RJS), 2008 WL 2047612, at *4 (S.D.N.Y. May 12, 2008)

(awarding attorney's fees and costs where a losing party failed to participate in the arbitration proceedings, did not file a motion to modify or vacate the Arbitration Award, and failed to pay the full Arbitration Award save for a partial payment on a check endorsed with a notation stating it was being made under protest); *Herrenknecht Corp. v. Best Rd. Boring*, No. 06 Civ. 5106 (JFK), 2007 WL 1149122, at *4 (S.D.N.Y. Apr. 16, 2007) (awarding attorney's fees and costs when respondent refused to participate in arbitration proceedings, failed to satisfy, or even contest arbitration award, and failed to oppose petition to confirm award); *N.Y.C. Dist. Council of Carpenters Pension Fund v. A Plus Flooring, Inc.*, No. 07 Civ. 4070 (DLC), 2007 WL 2947464, at *3 (S.D.N.Y. Oct. 9, 2007); *In re Arbitration Soft Drink and Brewery Workers Union Local 812, IBT, AFL-CIO v. Ali-Dana Beverages, Inc.*, No. 95 Civ. 8081 (SAS), 1996 WL 420209, at *3 (S.D.N.Y. July 25, 1996). Accordingly, the Court concludes that an award of attorney's fees and costs against GCG, Passaro, and Shea is warranted.

As for Mandell, although the Court has ultimately upheld the award against him, it cannot say that Mandell has refused to abide by the award entirely without justification or acted in bad faith. Unlike the other Cross-Respondents, Mandell both contested the underlying arbitral proceedings below and timely moved to vacate the award. Although the Court agrees with Reeve that much of the "misconduct" about which Mandell complains is "the product of his [own] strategic self-creation" (Reeve's Reply 20), it cannot not conclude as a matter of law that Mandell's arguments opposing confirmation of the Award were made wholly in bad faith. *See, e.g.*, *N.Y.C. Dist. Council of Carpenters Pension Fund v. B & A Interiors, Ltd.*, 07 Civ. 5620 (RJS), 2009 WL 233969, at * 5 (S.D.N.Y. Jan 23, 2009)

(denying attorney's fees where the respondent's negligence, rather than willfulness, led to default in the underlying arbitration action and where respondent's arguments in opposition to confirmation were not submitted in bad faith); *Great Atl. & Pac. Tea Co. v. Local Union No. 338, Retail, Wholesale and Dep't Store Union*, No. 95 Civ. 5255 (LLS), 1996 WL 282074, at *3 (S.D.N.Y. May 28, 1996) (denying attorney's fees where prevailing party failed to show that arguments, though unsuccessful, were made without justification rather than as a result of good faith belief in their validity).

Accordingly, the award of attorney's fees and costs is entered solely against Cross-Respondents GCG, Shea, and Passaro. Within 14 days of the date of this Order, Reeve's counsel shall submit an accounting of those fees and costs it incurred solely in bringing a Petition to Confirm against GCG, Shea, and Passaro. As with all applications for attorney's fees in this Circuit, it must be accompanied by contemporaneous time records indicating "the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir.1983). Any opposition by the Cross-Respondents to the amount of the request must be submitted within 14 days of its filing.

## V. CONCLUSION

For the reasons stated above, the petition to vacate the award is denied, and correspondingly, the petition to confirm the award is granted. Upon receiving and reviewing Reeve's application for attorney's fees and expenses in bringing the petition against GCG, Shea, and Passaro, the Court will direct the Clerk of the Court to enter

final    judgment    against    all    Cross-
Respondents.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated:  October 4, 2011
        New York, New York

                    ***

    Ross H. Mandell is represented by
Jeffrey C. Hoffman, Lisa R. Rosenthal, and
William A. Rome of Hoffman & Pollock
LLP, 260 Madison Avenue, 22nd Floor,
New York, NY 10016.

    Nicholas S. Reeve and Prostar 2000 are
represented by Nicholas J. Guiliano of
Guiliano Law Firm, P.C., 230 South Broad
Street, Suite 601, Philadelphia, PA 19102.

15